**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN MCCARTHY,** | : | **Civil No. 1:12-CV-2365** |
| | : | |
| **Petitioner,** | : | **(Judge Caldwell)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **DAVID EBBERT,** | : | |
| | : | |
| **Respondent.** | : | |

## REPORT AND RECOMMENDATION

### I.      Statement of Facts and of the Case

#### A.      Introduction

This case comes before us for consideration of the merits of the petitioner's claims that federal prison disciplinary findings were constitutionally infirm. Specifically, the petitioner invites us to examine the results of a prison disciplinary hearing which led to the forfeiture of good time for this federal prisoner.  Because we find that McCarthy fundamentally misconstrues the law, further conclude that the petitioner was afforded a full panoply of procedural protections in this disciplinary hearing, and finally believe that there is sufficient evidence to support the prison's finding of misconduct, it is recommended that this petition be denied.

## B.    DHO Proceedings

This case arises out of a brutal and unprovoked assault on correctional staff by the petitioner.  With respect to this assault, an attendant discipline, the pertinent facts can be simply stated:

The petitioner, John McCarthy is an armed career criminal who is currently serving a sentence of 235 months imprisonment for Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C. §§ 922(g) and 924(e). ( Doc. 12, Att. A to Declaration of Donna Broome Ex. 1 at 2.)  On September 17, 2009, an  Incident Report was written against McCarthy, charging him with Assault.  The Incident Report described this attack in the following terms:

> On September 17, 2009, at 2:09 p.m., while inmates returned to c/b housing unit, staff members Amalla and Zonno were attempting to escort inmate McCarthy to the lieutenants holding cell.  When Mr. Amalla asked inmate McCarthy to step aside, he struck Mr. Amalla in the jaw with a closed fist.  He then attempted to strike Mr. Zonno in the face also with a closed fist.  At that point staff placed inmate McCarthy on the floor and applied hand restraints while I applied leg restraints.  The inmate was escorted to the lieutenants office without further incident.

(Doc. 12, Incident Report Att. A to Declaration of Erika Fenstermaker Ex. 2 at 1.) That same date, September 17, 2009, proceedings on the Incident Report were suspended pending referral of the incident to the Federal Bureau of Investigation.  (Id., Att. B to Fenstermaker Decl. Ex. 2.)  On November 30, 2009, the FBI notified the

prison that it could proceed with disciplinary hearings relating to this staff assault. (Id.)

Accordingly, on November 25, 2009, a copy of the Incident Report was delivered to McCarthy at USP Florence. (Id., Att. A to Fenstermaker Decl. Ex. 2 at 2.) At this time, McCarthy was advised of his rights throughout the disciplinary process and stated that he understood his rights. (Id.) After reviewing the Incident Report, McCarthy declined to make any statement and requested no witnesses. (Id.) The investigating officer then referred the matter to the Unit Discipline Committee ("UDC") for an initial hearing. ( Id.)

On December 8, 2009, Petitioner's Unit Team requested an extension of time in which to hold the initial hearing beyond five days of the date staff became aware of McCarthy's involvement in the incident, a request which the warden granted. (Id., Att. B to Fenstermaker Decl. Ex. 2.) McCarthy's initial UDC hearing was then held on December 10, 2009. (Id.) At this hearing, McCarthy elected not to make a statement. ( Id.) At the conclusion of the initial hearing, the UDC referred the matter to the Discipline Hearing Officer ("DHO") for final disposition of the charges "based on staff statement in Section 11 and attached memos/medical assessment." (Id.), McCarthy received written notice of the upcoming DHO hearing on December 10, 2009. (Id., Notice of Discipline Hearing Att. D to Fenstermaker Decl. Ex. 2.) At that

time, McCarthy was advised in writing of his rights at the DHO hearing. (Id., Inmate Rights at Discipline Hearing Att. C to Fenstermaker Decl. Ex. 2.) McCarthy then selectively exercised his rights, requesting a staff representative but declining to call any witnesses. (Id., Notice Att. D to Fenstermaker Decl. Ex. 2.)

On December 16, 2009, a staff representative was selected to be McCarthy's staff representative and assist him at the DHO hearing. This staff representative was directed to meet with McCarthy to discuss the charge prior to the DHO hearing. and was otherwise advised of his duties as McCarthy's staff representative. (Id., Duties of Staff Representative Att. F to Fenstermaker Decl. Ex. 2.)

On January 27, 2010, this DHO hearing was held at the United States Penitentiary Florence. (Id., Discipline Hearing Officer Report Att. G to Fenstermaker Decl. Ex. 2 at 1.) McCarthy's staff representative attended and assisted McCarthy at the DHO hearing. (Id.) The DHO initially took notice of the fact that McCarthy did not receive immediate written notice of the charge against him, noting that processing of the report was suspended from September 17, 2009 until November 25, 2009, due to referral of the incident to the FBI, a practice which is sanctioned by prison rules. (Id. at 2.) The DHO then advised McCarthy of his due process rights at the DHO hearing, and observed that McCarthy made no complaints, and lodged no objections concerning any of these procedural issues. (Id.) McCarthy was advised, once again,

of his right to have a staff representative and to call witnesses, and elected not to call any witnesses. (Id.) McCarthy also indicated he had no documentary evidence to present. (Id.)

After the DHO read the Incident Report to McCarthy, he asked McCarthy if the report was true, and McCarthy replied, "Guilty." (Id.) The DHO then stated that in addition to the Incident Report, and McCarthy's guilty plea admission, he was considering the following evidence in making his determination: a prison 5 day memorandum; the referral for criminal matter; photographic evidence; memoranda from BOP employees F. Amalla, J. Vigil, M. Banuelos, D. Diehl, P. Woolston, J. Williams, J. Bellantoni, M. Gillentine, L. Klein, M. Soto, J. Zonno, L.J. Milusnic and K. Fulton; and medical records. (Id. at 2-3.) At the conclusion of the hearing, the DHO found that McCarthy had committed the prohibited act of assault, and imposed the following sanctions: 30 days of Disciplinary Segregation; 180 days of visitation restriction, commissary restriction, property restriction, telephone restriction, and disallowance of 27 days of GCT. (Id. at 4.) On February 17, 2010, the DHO report was delivered to McCarthy, and McCarthy was advised that if he wished to appeal the DHO's decision, he must file his appeal within 20 days of the date of the DHO report, pursuant to the administrative remedy process. (Id.)

At the time of this disciplinary proceeding the Bureau of Prisons had a three-level administrative remedy process in place that must be fully exhausted before an inmate can bring an action in federal court. See 28 C.F.R. § 542.10, et seq. "The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." Id. at § 542.10(a). "If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures." Id. at § 542.10(c). In order to exhaust appeals under the BOP's administrative remedy procedure, an inmate must first informally present his complaint to staff, and staff is to attempt to resolve the matter. Id. at § 542.13(a). If the informal resolution is unsuccessful, then the inmate must execute the appropriate form and bring the matter to the attention of the warden. Id. at §542.14. The warden is then to respond to the inmate's complaint within 20 calendar days. If the inmate is dissatisfied with the warden's response, he may then appeal to the BOP Regional Director within 20 calendar days. Id. at § 542.15(a). If the response of the BOP Regional Director is not satisfactory, the inmate may then appeal to the BOP Central Office within 30 calendar days, which office is the final administrative appeal in the BOP. Id. An exception is made for appeals of decisions of a discipline hearing officer ("DHO"), such as in the instant case, which are first

raised directly to the BOP Regional Office and then to the BOP Central Office. 28 C.F.R. §542.14(d)(2). No administrative remedy appeal is considered to have been fully exhausted until rejected by the BOP Central Office. Id. at § 542.15(a).

The evidence reflects that McCarthy failed to fully and properly exhaust any issue raised in the Petition. Specifically, from September 17, 2010, through December 18, 2012, McCarthy has filed 107 administrative remedies complaining about various aspects of his imprisonment, averaging one grievance per week over this two year period. (Id. ¶ 9; BOP SENTRY Report, Administrative Remedy Generalized Retrieval Att. B to Broome Decl. Ex. 1.) Of these 107 grievances only two were related in any way to the disciplinary action taken against him. (Id., Broom Decl. Ex. 1 ¶ 9.)

On February 25, 2010, McCarthy filed two appeals with the BOP Regional Office challenging this disciplinary action. On February 25, 2010, both of these appeals were rejected because McCarthy did not use the correct form. (Id.) McCarthy was advised that he could correct his error and re-file his appeals within 15 days of the date of the rejection notice but McCarthy never attempted to re-file appeals for either of these administrative remedies. (Id.)

Instead, McCarthy waited more than two years before he filed the instant federal habeas corpus petition. (Doc. 1.)

## II.  Discussion

### A.  The Exhaustion Doctrine  Bars Consideration of This Habeas Petition

At the outset, to the extent that McCarthy challenges this disciplinary citation this petition suffers from a fundamental procedural flaw, since the petitioner has failed to properly exhaust his administrative remedies within the federal prison system. Although 28 U.S.C. § 2241 contains no express exhaustion requirement, "[o]rdinarily, federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241." Gambino v. Morris, 134 F.3d 156, 171 (3d Cir.1998); see also, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir.2000); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir.1981).  These exhaustion rules serve an important and salutary purpose.  The United States Court of Appeals for the Third Circuit requires administrative exhaustion of a claim raised under § 2241 for three reasons:  "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir.1996); see also Gambino, 134 F.3d at 171; Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir.1988).

In this case, it is undisputed that McCarthy has not fully exhausted his administrative remedies, since McCarthy neglected to fully prosecute this grievance through the three-tier grievance process prescribed by prison regulations. Thus, this case presents the very paradigm of an unexhausted petition. With respect to unexhausted habeas claims like those presented by here, it is well settled that: "Courts in the Middle District of Pennsylvania have consistently held that 'exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals . . . . .' " Ross v. Martinez, No. 09-1770, 2009 WL 4573686, 3 (M.D.Pa. Dec. 1, 2009). Quite the contrary, rigorously applying these exhaustion requirements, court have consistently rejected habeas petitions challenging prison disciplinary decisions where the inmate-petitioners have failed to fully exhaust their administrative remedies. See, e.g., Johnson v. Williamson, 350 F. App'x 786 (3d Cir. 2009); Pinet v. Holt, 316 F. App'x 169 (3d Cir. 2009); Moscato v. Federal Bureau of Prisons, 98 F.3d. 757 (3d Cir. 1996).

As this court has previously explained when dismissing a federal prisoner's habeas petition for failure to exhaust administrative remedies:

> In order for a federal prisoner to exhaust his administrative remedies, he must comply with 28 C.F.R. § 542. See 28 C.F.R. § 542.10, et seq.; Lindsay v. Williamson, No. 1:CV-07-0808, 2007 WL 2155544, at *2 (M.D.Pa. July 26, 2007). An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. §

542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. 28 C.F.R. § 542.14(a). If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and the Central Office of the BOP. 28 C.F.R. §§ 542.15(a), 542.18. No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office. See Sharpe v. Costello, No. 08-1811, 2008 WL 2736782, at *3 (3d Cir. July 15, 2008).

Miceli v. Martinez, No. 08-1380, 2008 WL 4279887, 2 (M.D.Pa. Sept. 15, 2008)

This exhaustion rule in federal habeas corpus proceedings is also subject to a procedural default requirement. "[A] procedural default in the administrative process bars judicial review because 'the reasons for requiring that prisoners challenging disciplinary actions exhaust their administrative remedies are analogous to the reasons for requiring that they exhaust their judicial remedies before challenging their convictions; thus, the effect of a failure to exhaust in either context should be similar.' Sanchez, 792 F.2d at 698. We require exhaustion for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy. Bradshaw, 682 F.2d at 1052; see also Schlesinger v. Councilman, 420 U.S. 738, 756-57, 95 S.Ct. 1300, 1312, 43 L.Ed.2d 591 (1975) (exhaustion avoids duplicative proceedings and insures that judicial review will be informed and narrowed); McKart v. United States, 395 U.S. 185, 195, 89 S.Ct. 1657,

1663, 23 L.Ed.2d 194 (1969) (circumvention of administrative process diminishes effectiveness of an agency by encouraging prisoners to ignore its procedures). Requiring petitioners to satisfy the procedural requirements of the administrative remedy process promotes each of these goals." <u>Moscato v. Fed. Bureau of Prisons</u>, 98 F.3d 757, 761-62 (3d Cir. 1996)

For these reasons, "a federal prisoner who challenges a disciplinary proceeding within a federal institution, fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice." <u>Id.</u>

This basic legal tenet applies here and is fatal to McCarthy's habeas corpus petition. With respect to his complaints regarding this disciplinary citation McCarthy is an inmate who has failed to exhaust his remedies, and now fails to provide cause and prejudice which excuses this earlier procedural default. Therefore, McCarthy's unexhausted claims should be dismissed.

In any event, even if we accepted McCarthy's claim that his failure to exhaust should be excused, this petition should still be denied because, as discussed below, this petition fails on its merits.

## C.     This Petition Fails on Its Merits

Considered on its merits, this petition fails on substantive grounds given the deferential standard of judicial review that applies to prison disciplinary actions. Liberally construed, in this habeas petition McCarthy launches a two-fold constitutional assault upon these prison disciplinary decisions, challenging the disciplinary process generally on procedural due process grounds, and asserting that the decisions were substantively flawed since there was insufficient evidence to support a finding of misconduct on his part. Yet, McCarthy faces an exacting burden of proof in advancing these two constitutional claims.

### 1.     Procedural Standards for DHO Hearings

First, with respect to his procedural due process concerns, it is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to:  (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3)

a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action.  Id. at 563-67.

Due process also requires that a prison disciplinary tribunal be sufficiently impartial.  Meyers v Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974).  The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee."  Meyers, 492 F.2d at 306.  In the past, inmates have often invited courts to set aside disciplinary hearing results based upon general assertions of staff bias.  Yet, such requests, while frequently made, have rarely been embraced by the courts. Instead, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation.  Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009).  Furthermore, in the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," Greer v. Hogston, 288 F.App'x. 797, 799 (3d Cir. 2008), courts generally decline to strike down disciplinary decisions on claims of staff bias.  See Redding v. Holt, 252 F.App'x 488 (3d Cir. 2007).

In the federal prison system, the Bureau of Prisons has, by regulation, adopted specific guidelines for inmate discipline procedures which are set forth at 28 C.F.R. §541.10 et seq. These guidelines are specifically tailored and designed to meet the due process requirements outlined by the Supreme Court in <u>Wolff</u>. <u>See</u> <u>Von Kahl v. Brennan</u>, 855 F. Supp. 1413 (M.D. Pa. 1994). Under these regulations, when prison staff have reason to believe that a prohibited act has been committed by an inmate, an incident report must be prepared and referred for investigation. 28 C.F.R. §541.14. After investigation, the incident report is referred to a Unit Discipline Committee (UDC) for an initial hearing. 28 C.F.R. §541.15. The inmate, in turn, is entitled to notice of any proposed violation. The UDC may either reach a finding regarding whether a prohibited act was committed, or refer the case to the Discipline Hearing Officer (DHO) for further hearing. 28 C.F.R. §541.15(f). The DHO then has the authority to dismiss any charge, to find a prohibited act was committed, and to impose any available sanction for the act. 28 C.F.R. §541.18. The hearing is conducted pursuant to the procedures set forth at 28 C.F.R. §541.17.

Throughout this hearing process the inmate is provided with a series of procedural rights. For example, the inmate is entitled to notice of the alleged infraction. Specifically, the Warden must give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R. §541.17(a). The

inmate is also entitled to assistance at DHO hearings. In particular, the Warden must provide the inmate with a full time staff member to represent him at the DHO hearing. 28 C.F.R. §541.17(b).

The inmate also has a series of procedural rights at the hearing itself. Thus, at the DHO hearing, the inmate is entitled to make a statement and present documentary evidence. The inmate also has the right to submit names of requested witnesses and have them called to testify and to present documents. While the DHO need not call repetitive witnesses or adverse witnesses, 28 C.F.R. §541.17(c), the DHO shall call those witnesses who have information directly relevant to the charges and who are reasonably available. The inmate has the right to be present throughout the DHO hearing except during deliberation or when institutional security would be jeopardized. 28 C.F.R. §541.17(d).

In addition, the regulations prescribe procedural standards for DHO decision-making. Thus, the regulations require that the DHO must consider all evidence presented at the hearing. The decision of the DHO must be based on the facts presented, and if there is conflicting evidence, it must be based on the greater weight of the evidence. 28 C.F.R. §541.17(f). Finally, the DHO must prepare a record of the proceedings. This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied upon

by the DHO. The record must include a brief statement of the reasons for the sanction imposed. A copy of this record must be delivered to the inmate, ordinarily within 10 days of the hearing. 28 C.F.R. §541.17(g).

Given the panoply of procedural protections afforded to inmates by these regulations, courts have consistently held that when prison officials comply with these regulations they fully satisfy the requirements of procedural due process in this prison disciplinary setting. See, e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009) (upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

## 2.     Substantive Standards Governing DHO Decisions

In his habeas petition, McCarthy also attacks the substance of the DHO decisions, arguing that there was insufficient evidence to support any findings of misconduct on his part. Like his procedural due process challenge, this substantive attack on the sufficiency of the evidence in these disciplinary hearings must meet a demanding legal standard to succeed. A prison disciplinary determination comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there

is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Accordingly, in order to pass constitutional muster a "disciplinary decision must [simply] be supported by 'some evidence,' that is, 'any evidence in the record that could support the conclusion reached by the disciplinary board.' " Campbell v. Holt, 432 F. App'x 49, 51 (3d Cir. 2011). Therefore, it is well settled that the decision of the DHO is entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986).

Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [DHO]." Freeman, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the

> relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456. McGee v. Scism, 463 F. App'x 61, 63 (3d Cir. 2012); Stanko v. Obama, 434 F. App'x 63, 66 (3d Cir. 2011) (The "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"); Campbell v. Holt, 432 F. App'x 49, 51 (3d Cir. 2011)("we need not examine the entire record, re-weigh the evidence, or independently assess witness credibility in assessing whether the 'some evidence' standard is met.") Applying this deferential standard, once the reviewing court determines there is "some evidence" to support the finding of the DHO, the court must reject the evidentiary challenge by the petitioner and uphold the finding of the DHO. Griffin v. Spratt, 969 F.2d 16, 22 (3d Cir. 1992); Thompson, 889 F.2d 501; Freeman, 826 F.2d at 954. In practice, courts have rarely condemned correctional disciplinary decisions as being wholly lacking in evidentiary support, and have frequently concluded that disciplinary findings are supported by the requisite degree of proof. See e.g., McGee v. Scism, 463 F. App'x 61, 63 (3d Cir. 2012); Stanko v. Obama, 434 F. App'x 63, 66 (3d Cir. 2011); Campbell v. Holt, 432 F. App'x 49, 51 (3d Cir. 2011); Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F.

App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

### D. McCarthy Was Afforded His Procedural Due Process Rights at the DHO Hearings, and the DHO Findings of Misconduct Are Supported By Adequate Evidence

Judged against these standards, McCarthy's procedural and substantive challenges to these two prison disciplinary proceedings simply fail. First, with respect to any procedural due process claims, in this case it is evident that this prisoner's due process rights were fully vindicated. McCarthy received advance, written notice of the proposed disciplinary charges against him. Moreover, he was notified on multiple occasions of his procedural due process rights, including his right to have staff assistance and to request witnesses. In this case, McCarthy either exercised those rights, or expressly waived the rights he had in connection with these disciplinary hearings. Furthermore, once the hearings were concluded prison officials scrupulously complied with prison regulations, and afforded McCarthy his due process rights, by providing him with written decisions outlining the basis of their actions, and describing his appellate rights.

As for any complaints regarding the procedural fairness of the DHO proceedings, the petitioner offers little to support this claim beyond a "generalized

critique" of staff impartiality, which is as a legal matter insufficient to demonstrate the degree of bias necessary to prove a due process violation. Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009). Thus, the record of these disciplinary proceedings affirmatively reveals that McCarthy was given all of the procedural protections that due process requires in this setting since he was afforded: (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. at 563-67. Given the full array of procedural rights provided to McCarthy during these proceedings, any procedural due process claims simply fail. See e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

Nor can McCarthy successfully challenge the substantive outcome of the DHO hearing, since it is apparent that these decisions were adequately supported by "some evidence" in the record. Indeed, with respect to this issue, the DHO decisions entailed the most basic of fact-finding determinations: weighing inculpatory evidence and considering whether that evidence supported the inmate's admission of guilt. Given

McCarthy's acknowledgment of his guilt, the DHO need only have believed McCarthy to find him guilty of this infraction. In light of McCarthy's confession, the DHO finding of guilt was entirely reasonable, and since the "some evidence" standard of "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence," but only entails a determination "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board," Stanko v. Obama, 434 F. App'x 63, 66 (3d Cir. 2011), this reasonable, rational finding by the DHO is fatal to McCarthy's claims in this petition.

Accordingly, on these facts, we conclude that there was also some evidence to support this disciplinary finding. Since there is an adequate factual basis for that disciplinary finding, McCarthy's substantive challenge to these disciplinary actions should also be rejected. See, e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

E.    **McCarthy May Not Use This Petition To Challenge The Conditions of His Confinement**

Finally, to the extent that McCarthy endeavors to use this petition to complain about the current conditions of his confinement, McCarthy may not make such a claim

in this habeas corpus petition.  The writ of habeas corpus, one of the protections of

individual liberties enshrined in our Constitution, serves a specific, and well-defined

purpose.  The writ of habeas corpus exists to allow those in the custody of the state to

challenge in court the fact, duration and lawfulness of that custody.  As the United

States Court of Appeals for the Third Circuit has aptly noted:  "The underlying

purpose of proceedings under the 'Great Writ' of habeas corpus has traditionally been

to 'inquire into the legality of the detention, and the only judicial relief authorized was

the discharge of the prisoner or his admission to bail, and that only if his detention

were found to be unlawful.' "  Powers of Congress and the Court Regarding the

Availability and Scope of Review, 114 Harv. L.Rev. 1551, 1553 (2001)." Leamer v.

Fauver, 288 F.3d 532, 540 (3d Cir. 2002).  However, there is a necessary corollary to

this principle, one which has long been recognized by the courts; namely, "[i]f a . . .

prisoner is seeking [other relief], he is attacking something other than the fact or

length of his confinement, and he is seeking something other than immediate or more

speedy release-the traditional purpose of habeas corpus.  In [such cases], habeas

corpus is not an appropriate or available federal remedy." Preiser v. Rodriguez, 411

U.S. 475, 494 (1973).

Thus, where a prisoner wishes to constitutionally challenge some aspect of the

conditions of his confinement unrelated to the fact or duration of his detention, courts

have repeatedly held that the writ of habeas corpus is not the proper vehicle for bringing this legal challenge. For example, in Leamer v. Fauver , supra the United States Court of Appeals discussed whether a habeas corpus petition was the appropriate tool for an inmate to use when challenging a prison disciplinary placement decision, like the decision at issue in this case. In terms that are equally applicable here the Court of Appeals held that these type of claims are not cognizable under habeas, stating:

> When read together, there is a logical and coherent progression of Supreme Court jurisprudence clarifying when [habeas and other civil rights relief] is unavailable: whenever the challenge ultimately attacks the "core of habeas" -the validity of the continued conviction or the fact or length of the sentence-a challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition. Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under [other civil rights statutes] is appropriate.

Leamer, 288 F.3d at 542 .

Following Leamer, courts have often considered invitations by inmates to use the writ of habeas corpus to examine prison conditions and placement decisions. Without exception, these invitations have been declined by the courts as a legal exercise which fall beyond the scope of habeas corpus jurisdiction. See e.g., Dickerson v. Diguglielmo, 306 F. App'x. 707 (3d Cir. 2009); Jupiter v. Warden,

U.S.P. Lewisburg, 237 F. App'x. 726 (3d Cir. 2007); Levi v. Holt, 193 F. App'x. 172 (3d Cir. 2006); Beckley v. Miner, 125 F. App'x. 385 (3d. Cir 2005).

These settled legal tenets control here and are fatal these condition of confinement claims in McCarthy's habeas petition. Since it is well established that these type of complaints simply do not sound in habeas, this petition must be dismissed. McCarthy's recourse, if any, would be through a Bivens civil rights action challenging these prison conditions. However, because the filing requirements for habeas and Bivens actions differ, and the two types of actions raise different issues in terms of procedural requirements and substantive standards, it would not be appropriate to simply construe this pleading, which was clearly designated as a habeas petition, as a Bivens action. Instead, it is recommended that this petition be dismissed without prejudice to McCarthy filing a separate action under Bivens, if he chooses to do so. Woodruff v. Williamson, No. 06-2310, 2009 WL 703200, at 6 (M.D. Pa. March 12, 2009)(dismissing habeas petition challenging SMU placement without prejudice to separate Bivens civil action).

**III**.    **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of the merits of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be

DENIED, and that a certificate of appealability should not issue. The petitioner is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 1st day of March 2013.

_**S/Martin C. Carlson**_
Martin C. Carlson
United States Magistrate Judge